UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL A. BUSSHART,

                          **Plaintiff,**

v.

                                                                            **18-CV-745-HKS**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                          **Defendant.**

## DECISION AND ORDER

Plaintiff, Michael A. Busshart, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 14.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 7, 12. For the reasons that follow, Plaintiff's motion (Dkt. No. 7) is GRANTED and Defendant's motion (Dkt. No. 12) is DENIED.

## BACKGROUND

On February 25, 2015, Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability since February 1, 2014, due

to: chronic incapacitating headaches; arthritis, spurs, and cyst in his neck; chronic neck pain; left knee issues with two surgeries, torn cartilage and ligaments; and difficulty sleeping and sitting due to pain. Tr.[1] 169-170, 205[2]. On June 4, 2015, Plaintiff's claims were denied by the SSA at the initial level and he requested review. Tr. 92. On March 24, 2017, Plaintiff and his attorney appeared and Plaintiff testified along with a vocational expert ("VE") before Administrative Law Judge, Lynette Gohr ("the ALJ"). Tr. 35-79. On April 24, 2017, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act. Tr. 9-32. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on May 9, 2018. Tr. 1-9. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## **LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks

---

[1] References to "Tr." are to the administrative record in this matter. Dkt No. 7.
[2] Plaintiff also listed two prior accidents with injuries including: a 1979 car accident where he suffered many injuries including a fractured skull, internal lacerations, five-day coma, nerve and muscle damage in eyes, double vision; and a 2003 fall injury to his neck and back. Tr. 205.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work

3

activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above. First, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2019. Tr. 14. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. *Id.* At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, epilepsy, cervicogenic headaches, and exertional dyspnea/chronic obstructive pulmonary disease ("COPD"). *Id.*[3] The ALJ

---

[3] The ALJ discussed Plaintiff's allegations of diplopia, depression, and anxiety as well. Tr. 14-15. The ALJ concluded that record evidence indicated no limitations from diplopia, noting Plaintiff can

4

found Plaintiff has non-severe impairment coronary artery disease, but noted the impairment is considered in Plaintiff's RFC. Tr. 14-15. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 15-16.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited range of light work[4]. Tr. 16. The ALJ found Plaintiff can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can occasionally reach overhead with the bilateral upper extremities. *Id.* The ALJ also found Plaintiff can perform fine and gross manipulations with the left upper extremity occasionally, but not constantly. *Id.* Lastly, the ALJ found Plaintiff must avoid concentrated exposure to dust, odors, fumes and pulmonary irritants, and must avoid concentrated exposure to unprotected heights and dangerous machinery. *Id.*

---

read and drive a car. *Id.* The ALJ also concluded that neither depression nor anxiety were "medically determinable impairments" where Plaintiff was not prescribed medication and did not receive mental health treatment from a medical professional for either condition. *Id.* In evaluating Plaintiff's allegations of depression and anxiety, the ALJ relied on a medical opinion from Consultative Examiner Janine Ippolito, Psy.D. ("Dr. Ippolito") who examined Plaintiff and diagnosed him with "unspecified depressive disorder with anxious distress," opining that Plaintiff's psychiatric problems did not appear to be significant enough to interfere with his ability to function on a daily basis. *Id.*

[4] Light work involves lifting no more than twenty pounds at a time occasionally, with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight carried may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b).

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a "Security Guard," with a light level of exertion. Tr. 25. Accordingly, the ALJ found Plaintiff was not disabled under the Act from February 1, 2014, through April 24, 2017. Tr. 22.

## II. Analysis

Plaintiff argues that remand is warranted because: (1) the ALJ erred by failing to provide "good reasons" for discounting medical opinions from two of Plaintiff's treating physicians; and (2) substantial evidence does not support the ALJ's determination that Plaintiff retained the capacity for sitting and standing requirements of a light exertional level of work. Dkt. No. 7 at 1. The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 12 at 7. This Court finds remand is warranted where the ALJ erred in discounting medical opinions from two of Plaintiff's treating physicians for the reasons that follow. Because this error warrants remand, this Court need not reach Plaintiff's remaining argument.

**The Treating Physician Rule and "Good Reasons Rule"**

Plaintiff argues the ALJ erred in discounting medical opinions from Gerald L. Peer, MD ("Dr. Peer") and Craig MacLean, DO ("Dr. MacLean"), without comprehensively providing "good reasons" in support of the determination. Dkt. No. 7 at 11.

An ALJ's evaluation of record medical opinions in determining a claimant's RFC is governed by the treating physician rule. 20 C.F.R. § 404.1527(c)(2). According

6

to the rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record, the ALJ will accord the opinion "controlling weight." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In discounting the opinion of a treating physician, an ALJ shall provide "good reasons" in support of the determination. 20 C.F.R. 416.1527(c)(2); *see also Harris v. Colvin*, 149 F.Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence and be sufficiently specific …" *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

"The ALJ must consider, *inter alia*, the "[l]ength of the treatment relationship and the frequency of examination"; the "[n]ature and extent of the treatment relationship"; the "relevant evidence …, particularly medical signs and laboratory findings," supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)). Once the ALJ considers these factors, the ALJ is required to "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33. Remand is warranted where an ALJ fails to provide "good reasons" in discounting the opinion of a claimant's treating physician. *Burgess,* 537 F.3d at 129 (citing *Snell v. Apfel*, 177 F. 3d 128, 133 (2d Cir.1999); *see also* Schaal v. Apfel, 134 F.3d

7

496, 505 (2d Cir.1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of Plaintiff's treating physician constituted legal error")).

In February 2017, Dr. Peer and Dr. Maclean authored medical opinions on Plaintiff's residual functional capacity, with each completing two SSA forms, "Headaches Residual Functional Capacity Questionnaire" and "Treating Medical Source Statement." Tr. 704-726.[5]

Dr. Peer opined that Plaintiff would be absent once per month from work and would need unscheduled breaks daily, during an eight-hour workday. Tr. 706. Dr. Peer opined that when Plaintiff had a headache he would be precluded from performing even basic work activities and would need to lay down or sit quietly. *Id.* Dr. Peer also opined Plaintiff's pain would frequently[6] interfere with the attention and concentration needed to perform even simple work tasks. Tr. 712. Dr. Peer assessed that Plaintiff retained the capacity to sit for forty-five minutes at one time, but no more than four hours per day and stand for fifteen minutes at one time, but no more than four hours per day. Tr. 712. Dr. Peer also opined Plaintiff would need to walk every forty-five minutes for ten minutes each time; would require unscheduled breaks on a daily basis for approximately ten minutes each time; and would rarely be able to lift ten pounds. Tr. 712.

---

[5] Dr. Peer treated Plaintiff since July 2012, and Dr. MacLean treated Plaintiff since January 2014. Tr. 710, 716.
[6] "Frequently" is defined on the form as 34% to 66% of an eight-hour working day. Tr. 711.

8

Dr. MacLean opined Plaintiff would need to take three to four unscheduled breaks during an eight-hour work day on a daily basis where he could lay down or sit quietly for two to three minutes, unless the break was related to a headache, which he noted could incapacitate Plaintiff from an hour to an entire day. Tr. 718-719, 724. He also opined Plaintiff would be absent from work more than four times a month. Tr. 719. Dr. MacLean found Plaintiff's pain or other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. Tr. 723. The doctor opined Plaintiff: could stand for fifteen minutes at one time but less than two hours in an eight-hour work day; sit for thirty minutes at time for about four hours in an eight-hour work day; and would need to walk every twenty minutes for approximately two to three minutes. Tr. 723-724.

The ALJ accorded "little weight" to the medical opinions from both Dr. Peer and Dr. MacLean. Tr. 25. In addressing the medical opinions rendered by Dr. MacLean, the ALJ concluded the opinions were inconsistent with the medical evidence of record including findings on examinations and activities." Tr. 25. This Court finds the ALJ's reasoning is insufficient to satisfy the good reasons rule, where "good reasons must be supported by the evidence and be sufficiently specific." *See Halloran,* 149 F. Supp. 3d at 441. Here, the ALJ fails to identify any portion of Dr. MacLean's opinions or Plaintiff's medical record in support of her determination. Accordingly, this Court finds remand is warranted for the ALJ to comprehensively set forth her reasons for according "little weight" to Dr. MacLean's medical opinions.

Regarding Dr. Peer's medical opinions, the ALJ stated that they were inconsistent with the record as a whole, "including findings on examination and activities." Tr. 25. In support of her determination, the ALJ found that Dr. Peer's assessment that Plaintiff experienced side effects from his anti-seizure medication[7] was inconsistent with the Plaintiff's history of treatment with the medication and medical records of evidence. Here, the ALJ noted Plaintiff had taken the medication for many years, including when he was a firefighter, and the side effects Dr. Peer assessed were not identified in the examination records. *Id.* This Court finds that while the ALJ did offer a reason in support of her decision to accord "little weight" to Dr. Peer's opinions, the reason is insufficient to support her minimization of the doctor's opinions in their entirety. The ALJ's reliance on Dr. Peer's assessment of side effects from Plaintiff's seizure medication is highly specific and, as such, fails to sufficiently explain her decision to accord the remainder of the opinion, "little weight."

It is the ALJ's duty to provide sufficient reasoning in support of her decision to discount medical opinions rendered by treating physicians. Therefore, remand is required for the ALJ to comprehensively explain the weight accorded to the opinions of Dr. Peer and Dr. MacLean. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

---

[7] Dr. Peer listed mental sluggishness, fatigue, lack of concentration, and depressed affect as side effects Plaintiff experienced from, Keppra, his anti-seizure medication. Tr. 706 (Questions 16 &17).

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is GRANTED to the extent that this case is remanded for further proceedings. Defendant's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED. The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         March 4, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**